MT. CLEMENS SUGAR CO. *v*. GRAND TRUNK RAILWAY CO.

1. RAILROADS—DEMURRAGE—QUESTION FOR JURY — DIRECTED VERDICT.

In an action against a railroad company for the recovery of demurrage charges paid under protest by plaintiff, the owner of a beet sugar factory, under threat of withdrawal of defendant's switch engine and crew in case of refusal, where the evidence was conflicting as to whether delay in unloading cars during the free time allowed by the law was occasioned by plaintiff or defendant, the issue was properly submitted to the jury, and the court below was not in error in refusing to direct a verdict for defendant.

2. SAME—APPEAL AND ERROR—TRIAL—INSTRUCTIONS.

Refusal of the trial court to instruct the jury that the switching service on plaintiff's spur track was "plant switching," for which defendant was not liable, was not prejudicial to defendant, where the court in his instructions withdrew from their consideration the question of damages arising from defendant's failure to switch the cars after they were placed on plaintiff's spur; such instruction being in accordance with defendant's contention, it was immaterial whether denominated "plant switching" or "terminal switching."

200—Mich.—3.

**3. SAME.**

Nor could defendant complain of the court's instruction that defendant had the right to assess demurrage upon cars consigned to plaintiff which were held at nearby stations, upon its road, because of plaintiff's inability to handle them; said instruction being in accordance with defendant's contention.

**4. NEW TRIAL—ISSUES—OVERWHELMING WEIGHT OF EVIDENCE.**

Where the issues of fact were submitted to the jury under proper instructions, defendant's motion for a new trial on the ground that the verdict for plaintiff was against the overwhelming weight of the evidence was properly refused.

Error to Wayne; Van Zile, J. Submitted June 12, 1917. (Docket No. 37.) Decided March 1, 1918. Rehearing denied June 20, 1918.

Assumpsit by the Mt. Clemens Sugar Company against the Grand Trunk Railway Company for demurrage charges paid under protest. Judgment for plaintiff. Defendant brings error. Affirmed.

*L. C. Stanley (Geer, Williams & Martin,* of counsel), for appellant.

*Thomas A. E. Weadock (John C. Weadock,* of counsel), for appellee.

BIRD, J. Plaintiff owns and operates a sugar factory near Mt. Clemens which is connected with defendant's railroad system by means of a spur track about two miles north of Mt. Clemens. During the sugar making seasons of 1906-7, 1908-9, 1909-10, 1911-12, plaintiff, under threat of being deprived of the switch engine and crew, paid certain demurrage charges under protest to defendant, amounting to nearly $20,000. It was claimed that these charges should not have been demanded because plaintiff was not responsible for the delay in unloading the cars during the free time allowed by law, but that the fault lay with defendant because of its failure to

"spot" the loaded cars at the plant and withdraw the empty ones. It was also claimed that defendant's failure in this respect was due to its inadequate yard and track facilities at Mt. Clemens, together with its lack of suitable locomotive power and insufficient rolling stock. Defendant denied these contentions and asserted that plaintiff's failure to release the cars was due to the fact that it ordered more cars shipped at one time than its capacity could take care of, and as a result there were loaded cars awaiting delivery at Mt. Clemens, Milwaukee Junction, Durand, and other nearby stations. Upon this issue of fact much testimony was taken tending to establish the conflicting claims. The question was submitted to the jury and they found the fault lay with defendant, and assessed plaintiff's damages at the sum of $18,334.02. Defendant has removed the proceedings to this court for review, claiming that the trial court was in error because of its refusal to direct a verdict in its behalf.

1. Plaintiff, to establish its contention, showed that its daily capacity was from 35 to 40 cars of beets; that its tracks would hold 159 cars, and that if defendant had had sufficient trackage to have stored the consigned cars and taken care of the empties, there would have been little or no delay in unloading them; that defendant's track facilities at Mt. Clemens consisted of a single main track, a passing track three-quarters of a mile in length, a team track which would hold not to exceed 40 cars, and a private siding which it used holding 18 cars; that its track and yard facilities in these years were no greater than they were 30 years ago when Mt. Clemens was much smaller and the traffic much less than at the present time. It was further shown that the spur track to plaintiff's factory connected directly with the main line track instead of with the siding, and this was the cause of much delay on the part of the switching crew, as they

were obliged to wait, in the clear, the passing of 16
regular, besides several extra, trains each day.   It
further appeared that the lack of trackage compelled
defendant to store loaded cars at Milwaukee Junction,
Durand, and other nearby stations, and as a result the
beets could not be delivered to the factory fast enough
to keep the plant supplied.   There was much more
testimony along this same line which tended to show
that defendant was in fault for failure to deliver the
cars at the plant when needed.

On the other hand, testimony was offered tending
to discredit some of plaintiff's testimony in this re-
gard, and other testimony tending to show that the
cars were delivered as rapidly as plaintiff could take
care of them.   The testimony presented a clean-
cut question of fact, and was such that the jury
might have determined it either way.   Counsel's
contention that a verdict should have been directed
for defendant on this issue, in the face of this testi-
mony, is not easily understood.   We shall simply have
to dispose of it by saying we disagree with them.

2. Counsel argue that the trial court was in error
in refusing to instruct the jury that the switching
service on the spur which plaintiff counts upon as
not having been performed or properly performed was
"plant switching" for which defendant was not liable.
The interstate commerce commission has drawn a
distinction between "plant switching" and "terminal
switching," holding that the former is outside of the
contract of the carrier, and, therefore, unlawful as
a rebate, while the latter is within its contract of
carriage (14 I. C. C. 237-246).   This distinction has
been discussed by the Federal courts.   See *Los An-
geles Switching Case*, 234 U. S. 294.   Much contro-
versy was indulged in at the trial as to whether the
switching service on the spur at the plant, which was
contracted for and rendered by defendant, was "plant

switching" or "terminal switching." The declaration filed in this case covered a wide range of recovery. It was framed to recover for the demurrage paid under protest; for diverting cars of beets to other sugar factories; for the value of beets frozen and rotted by reason of delayed deliveries; for the wages of servants who were idle because of failure to deliver cars promptly, and for the failure of defendant to promptly switch the cars at the plant. At the close of the testimony the trial court was of the opinion, for various reasons which need not be herein recited, that but one question should be submitted to the jury, and that was the question of damages occasioned by a failure to deliver cars to the spur or exchange track, and the jury were expressly instructed that no damages arising by a failure to switch the cars after they were placed on the spur should be allowed, as will be shown by the following excerpt:

"I think, gentlemen of the jury, that there is no question but that in this case this railroad company was not obliged to do this switching in the yard of the complainant of these cars, and that whatever was done was volunteered, and that the complainant cannot find fault with reference to that or require it; and that the failure of the company, if there was any failure, and I may not say that there was, if there was any failure that that cannot be considered in this case by you, this failure to do this switching. So no claim of delay can be made on this ground."

We refrain from any comment as to the correctness of this instruction, but refer to it solely for the purpose of showing that the trial court instructed the jury in accordance with defendant's contention. In view of this elimination by the court we can see no occasion for discussing the question as to whether switching service on the spur and at the plant should be denominated "plant switching" or "terminal switching."

3. A considerable portion of the demurrage charge accrued on cars held at Milwaukee Junction, Durand, and other nearby stations. Plaintiff contended that demurrage could not be properly charged until the cars arrived at Mt. Clemens. Defendant insisted this was a proper charge if the cars were held at these stations because plaintiff could not handle them. The trial court took defendant's view and charged the jury in part that:

"The defendant company had the right to assess demurrage upon cars consigned to plaintiff which were held at Milwaukee Junction, Durand, or any station upon its road, because of the plaintiff's inability to receive and dispose of them at the factory, and was not called upon to wait until it had brought said cars to Mt. Clemens before charging demurrage upon the same."

As the trial court agreed with counsel in this contention, it will receive no further consideration.

4. It was urged upon a motion for a new trial that the verdict was against the overwhelming weight of the testimony. The issue of fact was submitted to the jury as favorably to defendant's case as the proofs would permit, and we think the conclusion reached by them is amply justified by the record. The record is quite persuasive that the real difficulty lay in the lack of terminal facilities of defendant at Mt. Clemens, and in the fact that the switching crew had to use the main track for switching purposes which would have been unnecessary had plaintiff's spur been connected with the siding. Had it been so connected switching operations could have gone forward while main line trains were passing. The application for a new trial upon this ground was properly overruled.

The judgment must be affirmed.

OSTRANDER, C. J., and MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.